UNITED STATES of America, Plaintiff,

v.

DEPARTMENT OF MENTAL HEALTH, County of Fresno, Defendants.

No. CV–F–90–621 REC.

United States District Court, E.D. California.

March 2, 1992.

---

United States Attorney's Office, Fresno, Cal., John J. Hoeffner, Civ. Rights Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Dennis A. Marshall, Sr. Deputy County Counsel, Michael Gary Woods, McCormick, Barstow, et al., Fresno, Cal., for defendants.

Mary Louise Frampton, Fresno, Cal., for intervenor Mary Arriaga.

## CORRECTED ORDER GRANTING THE MOTION OF MARY ARRIAGA TO INTERVENE (F.R.Civ.P. 24(a)(2))

DENNIS L. BECK, United States Magistrate Judge.

This is a Title VII action (42 U.S.C. §§ 2000e *et seq.*) brought by the United States of America, on behalf of Mary Arriaga. The complaint alleges that Defendant discriminated against Ms. Arriaga on the basis of her national origin/ethnicity (Mexican–American) by failing to promote her to the position of Case Management Director. Ms. Arriaga now seeks to intervene as a matter of right pursuant to Fed.R.Civ.P. 24(a)(2) which provides in pertinent part as follows:

(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the

applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. . . .

Fed.R.Civ.P. 24(a)(2).

In her Complaint in Intervention Ms. Arriaga seeks to recover damages for "emotional and mental distress and anguish, embarrassment, mortification, humiliation and indignity" and requests a jury trial on those issues. The new claims and jury demand are based upon her assertion that the Civil Rights Act of 1991 (hereinafter 1991 Act) or at least, Section 102 of that Act which adds 42 U.S.C. § 1981a providing for recovery of compensatory and punitive damages suffered as a result of intentional discrimination and a jury trial on those issues, is retroactive and should be applied to this case.

█ The United States objects to Intervenor's motion insofar as she asserts the right to recover compensatory damages [1] and demands a jury trial. The Equal Employment Opportunities Commission (EEOC) is of the opinion and has publicly taken the position that the 1991 Act is not retroactive.[2] *See*, EEOC Policy Guidance on Retroactivity of Civil Rights Act of 1991, BNA Daily Labor Report, January 2, 1992, (No. 1) D–1 through D–3. Defendant, Department of Mental Health joins in Plaintiff's objection and raises an additional objection on the grounds that motion to intervene is not timely.

## TIMELINESS

Defendant objects to the timeliness of the motion to intervene on the grounds that it first came for hearing only one week prior to the scheduled trial date. Defendant maintains that it would be prejudiced by the lack of time to prepare for a jury trial and by proceeding to trial on new issues relating to compensatory damages without the opportunity to conduct discovery. The issue of the close proximity of the trial date was mooted when, on the same date as the hearing on this motion at the Final Pretrial Conference, the parties agreed to vacate the trial date in order to obtain a final resolution of the issue of retroactivity at the District Court level prior to trial.

█ Vacating the trial date does not dispose of all issues relating to timeliness. Defendants allege that Intervenor waited an unreasonable time to bring her motion in light of the pending enactment of the 1991 Civil Rights Act (signed and effective November 21, 1991), Ms. Arriaga's motion was filed on January 13, 1992 and heard on January 24, 1992 [3]. Plaintiff, however, had not determined whether it would seek compensatory damages and/or a jury trial on behalf of Ms. Arriaga until the Pretrial Conference on December 2, 1991, and the EEOC did not publicly take an official position on retroactivity of the 1991 Act until December 31, 1991, when it issued its Policy Guidance Statement, *Id.* Even in light of the imminency of trial in this matter it cannot be said that Intervenor waited an unreasonable time after the EEOC's announcement of its position to file her motion.

---

**1.** Punitive damages are not requested nor are they permitted against a "government, government agency or political subdivision". 1991 Civil Rights Act § 102, 42 U.S.C. § 1981a(b)(1).

**2.** Although the EEOC has taken an official position on the question of retroactivity of the 1991 Act this policy is not entitled to the deference often accorded to the findings or statements of administrative agencies in their area of expertise. The EEOC's expertise is not in the area of statutory interpretation, "(q)uestions of law that can be answered with "traditional tools of statu-

tory construction" are within the expertise of the courts, not agencies, . . .". *Ayala–Chavez v. U.S. I.N.S.*, 945 F.2d 288 (9th Cir.1991) quoting from *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *see also Flores v. Meese*, 942 F.2d 1352, 1362 (9th Cir.1991) (*en banc*).

**3.** Both Plaintiff and Defendant cooperated in expediting the hearing on the Motion to Intervene by agreeing to shorten time for hearing.

Under the circumstances the motion was timely and cannot be denied on the grounds raised by Defendant on that issue.

## INTERVENTION AS A MATTER OF RIGHT

■ Intervenor qualifies for intervention as a matter of right, she "has an interest relating to the property or transaction which is the subject of the action" and she is "so situated that disposition of the action may as a practical matter impair or impede (her) ability to protect that interest", Fed. R.Civ.P. 24(a)(2). The claims in this case relate to discrimination against Ms. Arriaga, her entitlement to back and front pay, compensatory damages and injunctive relief. The rights at issue are primarily her personal rights and resolution of this case will be determinative of those rights.

■ The only remaining issue is whether her interests are adequately represented by the existing parties (*i.e.* by the U.S.). Ms. Arriaga's attorney stated at hearing on this motion that the only reason she sought to intervene was to assert her rights to compensatory damages and jury trial pursuant to 42 U.S.C. § 1981a; otherwise, she conceded, her rights were adequately represented by the United States. Thus the issue of whether Ms. Arriaga should be granted leave to intervene turns squarely upon the resolution of the question of whether the 1991 Civil Rights Act is retroactive.

■ Under Fed.R.Civ.P. 24(a)(2) the burden of establishing that "the applicant's interest is adequately represented by existing parties" falls upon the party or parties resisting the motion to intervene. Wright, Miller and Kane, 7c Federal Practice and Procedure Section § 1909 at pp. 314–323. Thus the burden of persuasion on the question of retroactivity of the 1991 Civil Rights Act rests, for purposes of this motion, upon the Plaintiff and the Defendant, to demonstrate that the 1991 Act is not retroactive. This burden of persuasion having been established, it might be enough for purposes of this motion to simply note the diversity opinions authored by those District Courts which have decided the issue of retroactivity[4]. However, because only one reported case on the issue has been found in the Ninth Circuit, I continue and analyze the question of retroactivity of the 1991 Act, a question which will undoubtedly occupy a great deal of judicial time in the coming years.

## RETROACTIVITY

"The starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as con-

---

4. Reported cases holding that the 1991 Civil Rights Act is not retroactive include: *Hansel v. Public Service Co.*, 778 F.Supp. 1126 (DCO 1992), addressing issues of the availability of compensatory and punitive damages where the effective date of the 1991 Civil Rights Act was the last day of trial. *Van Meter v. Barr*, 778 F.Supp. 83 (DDC 1991) addressing the issues of the availability of compensatory damages and jury trial on a motion to amend complaint. *High v. Broadway Industries, Inc.*, 57 Fair Empl.Prac. Cas. (BNA) 1159, 1992 WL 33860, 1992 U.S.Dist.Lexis 446 (WDMO 1992). *Khandelwal v. Compuadd, Corp.*, 780 F.Supp. 1077 (EDVA 1992) and *Johnson v. Rice*, 1992 WL 16284, 1992 U.S.Dist. Lexis 830 (SDOH 1992) addressing the issues of compensatory damages and right to a jury trial on a motion to amend. *Burchfield v. Derwinski*, 782 F.Supp. 532 (DCO 1992) addressing the right to a jury trial on a motion to amend.

  Cases finding that the 1991 Act should be applied retroactively include: *Mojica v. Gannett*

*Co.*, 779 F.Supp. 94 (NDIL 1991), motion to amend complaint to add request for compensatory and punitive damages, demand a jury trial and to strike any motion to limit claims pursuant to 42 U.S.C. § 1981. *La Cour v. Harris Co.*, 57 Fair Empl.Prac.Cas. (BNA) 622, 1991 WL 321020 (SDTX 1991) request for a jury trial. *King v. Shelby Medical Center*, 779 F.Supp. 157 (NDAL 1991) motion to amend to assert right to jury trial and claim for compensatory and punitive damages and to state claims under 42 U.S.C. § 1981. *Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302 (NDCA 1992) deciding that compensatory damages were available and that the provisions of the 1991 Act relating to disparate treatment and impact should be applied retroactively. *Bristow v. Drake Street, Inc.*, 1992 WL 14262 1992 U.S.Dist.Lexis 499 (NDIL 1992). *Graham v. Bodine Electric Co.*, 782 F.Supp. 74 (NDIL 1992) denying Plaintiff's motion for summary judgment on a failure to promote claim brought pursuant to 42 U.S.C. § 1981 based upon the retroactivity of the 1991 Act.

clusive.'" *Kaiser Aluminum and Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) quoting from *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The 1991 Act provides, "SEC. 402. EFFECTIVE DATE. (a) In General.—except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." 1991 Civil Rights Act Section 402(a).[5]

The language of the 1991 Act, stating that it takes effect on the date of its enactment, does not shed significant light on the question of whether its provisions were intended to be applied to pending cases where, the conduct in question and filing of the action predated the effective date of the 1991 Act[6]. Although some courts have stated that the above quoted language is a statement of retroactivity, most concur that there is no *clear* statement of retroactivity in the statute. No decision was found which turns solely or even primarily on the plain language of the statute. The language of the statute is not clear and does not, except in limited specific instances noted in the margin, provide direction with respect to its retroactive application.

The next level of analysis requires the use of various "tools of statutory construction" in an attempt to discern the legislative intent. However, any attempt to discern Congressional intent on the question of the retroactivity of the 1991 Act is doomed to failure. It is evident from the Congressional Record that Congress deliberately and expressly failed to agree on the question of retroactivity of the 1991 Civil Rights Act. Indeed, the Senate co-sponsors, Senators Danforth and Kennedy each included interpretive memoranda in the Congressional Record urging opposite conclusions on retroactivity. Senators Dole and Murkowski also read memoranda into the record reaching opposite conclusions, as did Representatives Edwards and Hide. 1991 Congressional Record S15478, S15483, S15485, H9512, and H9530–31. The only thing which becomes clear after considering the legislative history is that Congress could not and did not agree on whether the 1991 Act would be applied retroactively.

This conclusion is bolstered by the fact that President Bush vetoed the 1990 Civil Rights Act which contained an express provision mandating broad retroactive application. The plain fact is that neither the Republicans nor the Democrats in Congress could marshall the votes to prevail on with their respective views on the appropriateness of retroactive application of the 1991 Act. Therefore, Congress left the issue to be determined by the federal courts, each side believing and hoping that their respective views on the applicable presumption would prevail.

Some courts, in addressing the issue of retroactivity, have relied upon time honored principles of statutory interpretation such as, interpreting a statute in a manner to give meaning to each of its provisions or the principle that restorative legislation should be interpreted retroactively, to support their conclusion that the 1991 Act should be applied retroactively[7]. It seems

---

**5.** In certain respects Congress limited the applicability of the 1991 Act. For instance, Section 402(a) provides that no provision of the Act shall apply to "Any disparate impact case for which a complaint was filed before March 1, 1975 and for which an initial decision was rendered after October 30, 1983". The so called *Wards Cove* exception. Section 109(c) limits application of that section, applying the Act to U.S. citizens employed by U.S. employers in a foreign country, to conduct occurring after the date of the enactment of the 1991 Act.

Section 110(b) provides that it shall take effect on the date of enactment of the Act.

**6.** The claims of retaliatory conduct in this case raise an interesting question (which need not be resolved in light of this court's decision), since presumably the 1991 Act would unquestionably apply to any retaliatory conduct which occurred after November 21, 1991.

**7.** See *Stender, Id.* wherein Judge Patel relied upon both these principles of statutory construction in finding that the 1991 Act should be applied retroactively. In *Graham, Id.* Judge Leinenweber relied upon the principle of statutory interpretation that the court should endeavor to interpret statute in order to provide meaning to each section to find the 1991 Act should be applied retroactively.

though that these principles of statutory construction are of little use in resolving this issue. The purpose of these and other rules of statutory construction is to guide the court in an attempt, as best it can, to interpret legislation in a manner consistent with the *intent* of Congress. Almost every case discussing the issue of Congress' intent on the question of retroactivity of the 1991 Act agrees there is no mystery, there simply is no legislative intent or agreement on retroactivity. As a political compromise necessary to the enactment of the 1991 Act Congress simply left this matter for the courts to determine.

## PRESUMPTIONS RELATING TO RETROACTIVE APPLICATION OF CONGRESSIONAL ENACTMENTS

As noted in the comments of Senators Danforth and Kennedy, *Id.*, and in the Supreme Court's decision in *Kaiser Aluminum and Chemical Corp. v. Bonjorno*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 there are two lines of authority, both stemming from Supreme Court cases, regarding whether retroactivity will be presumed in absence of a clear indication in a statute. *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) holding that a court should apply the law in effect at the time of its decision and *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) stating "retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result". (Cit. Om.)

The Court in *Bonjorno* found it unnecessary to resolve the "apparent tension" between *Bradley* and *Bowen* finding that there was a clear expression of legislative intent. *Bonjorno, Id.* 494 U.S. at 837, 110 S.Ct. at 1577. Justice Scalia in a concurring opinion stated that the *Bowen* and *Bradley* cases "are in irreconcilable contradiction, and have spawned courts of appeal's opinions to match[.]" (cit. om.) He urged the court to return to the "clear rule of construction that has been applied, except for these last two decades of confu-

sion, since the beginning of republic and indeed since the early days of common law: absent specific indication to the contrary, the operation of non-penal legislation is prospective only." *Bonjorno, Id.* 494 U.S. at 841, 110 S.Ct. at 1579. Justice White joined by Justices Brennan, Marshall and Blackmun dissented stating that "[t]he tension (between *Bradley* and *Bowen* ) is more apparent than real, for the real rule against retroactivity has little to do with this case. This case does not involve true retroaction in the sense of the application of a change in the law to overturn a judicial adjudication of rights that has fairly become final." (cit. om.) *Bonjorno, Id.* 494 U.S. at 841, 110 S.Ct. at 1591.

The issue of the retroactive application of Section 102 of the 1991 Act turns upon the resolution of the questions of which presumption should be applied in absence of a specific statement controlling the retroactive application of legislative enactments. Indeed, many of the District Courts decisions on this issue have relied upon the answer to this question as provided by the appropriate United States Circuit Courts of Appeal. *Mojica v. Gannett, Co.*, 779 F.Supp. 94 (NDIL 1992); *Bristow v. Drake Street, Inc.*, 1992 WL 14262, 1992 U.S.Dist. Lexis 499 (EDIL 1992); and *Graham v. Bodine Electric Co.*, 782 F.Supp. 74 (NDIL 1992) each relied upon the Seventh Circuit's decision in *FDIC v. Wright*, 942 F.2d 1089 (7th Cir.1991) in applying the *Bradley* presumption in favor of retroactive application where it would not work manifest injustice. *King v. Shelby Medical Center*, 779 F.Supp. 157 (NDAL 1991) relied, at least in part, on *U.S. v. Peppertree Apt.*, 942 F.2d 1555 (11th Cir.1991). *Khandelwal v. Compuadd, Corp.*, 780 F.Supp. 1077 (EDVA 1992) relied upon the Fourth Circuit's opinion in *Leland v. Federal Insurance Administrator*, 934 F.2d 524 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991) expressing preference for the *Bowen* test. Similarly, the courts in *Van Meter v. Barr*, 778 F.Supp. 83 (DDC 1991); *High v. Broadway Industries, Inc.*, 57 Fair Empl.Prac. Cas. (BNA) 1159, 1992 WL 33860,

1992 U.S.Dist. Lexis 446 (WDMO 1992); *Hansel v. Public Service Co.*, 778 F.Supp. 1126 (DCO 1992); and *Burchfield v. Derwinski*, 782 F.Supp. 532 (DCO 1992) relied upon Circuit Courts of Appeals decisions denominating the *Bowen* test as the controlling. *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 963 (DC Cir. 1990); *Simmons v. Lockhart*, 931 F.2d 1226 (8th Cir.1991); and *DeVargas v. Mason & Hangar–Silas Mason Co., Inc.*, 911 F.2d 1377 (10th Cir.1990) cert. den., —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991), respectively.

In *Ayala–Chavez v. U.S. I.N.S.*, the Ninth Circuit expressly declined to attempt to reconcile the apparent conflict between the *Bradley* and *Bowen*, 945 F.2d 288, 295 n. 9 (9th Cir.1991). However, in *Federal Deposit Insurance Corporation v. New Hampshire Insurance Co.*, the court noted the "apparent tension" between *Bradley* and *Bowen* and chose to apply the *Bradley* rule that a court must apply the law in effect at the time of its decision unless to do so would result in manifest injustice, 953 F.2d 478 (9th Cir.1991). *Amended Opinion* 1991 WL 275059, 1992 U.S.App. Lexis 2372 (9th Cir. Feb. 25, 1992). The court in *F.D.I.C. v. New Hampshire Ins. Co.* found that there was no clear indication of legislative intent on the issue of the retroactivity of the six-year statute of limitations in the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) (12 U.S.C. § 1821(d)(14)(A)(i)) and followed *Bradley* in finding that retroactive application would not result in a manifest injustice. The Ninth Circuit has cited and applied the *Bradley* rule on several occasions, *see, e.g.; Gonzalez v. Aloha Airlines, Inc.*, 940 F.2d 1312, 1316 (9th Cir.1991); *Commonwealth of Northern Marianna Islands v. Kawano*, 917 F.2d 379, 381–382 (9th Cir.1990) cert. den. —— U.S. ——, 111 S.Ct. 1116, 113 L.Ed.2d 224 (1991); *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1424–25

(9th Cir.1989), cert. den., —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); and *DeGurules v. INS*, 833 F.2d 861, 863 (9th Cir.1987).

No Ninth Circuit case applying the *Bowen* presumption was found [8], however, the Ninth Circuit Court of Appeals has stated "(a)s a general rule, legislative enactments, including constitutional amendments, apply only prospectively. The Supreme Court has said that '(a) statute is not to be given retroactive effect unless such construction is required by explicit language or by necessary implication.' *Bruner v. United States*, 343 U.S. 112, 117 n. 8, 72 S.Ct. 581, 584 n. 8, 96 L.Ed. 786 (1952)." *Nelson v. Ada*, 878 F.2d 277, 280 (9th Cir.1989) citing neither *Bowen* nor *Bradley*.

Finally, the Ninth Circuit has also held that while

> [i]t is a rule of construction that statutes are ordinarily given prospective effect.... when a statute is addressed to remedies or procedures and does not otherwise alter substantive rights, it will be applied to pending cases. (Cit. om.) The purpose behind this rule of construction is clear. Non-retrospective application of a statute "prevents the assigning of a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed." *Union Pacific R.R. Co. v. Laramie Stock Yards, Co.*, 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913). This danger is not present where statutes merely effect remedies or procedures.

*Friel v. Cessna Aircraft, Co.*, 751 F.2d 1037, 1039 (9th Cir.1985). In *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985) the Supreme Court held that the substantive provisions of the 1978 amendments to Title I of the Elementary and Secondary Education Act could not be applied retroactively to infringe upon or deprive a person of a right that had matured or become unconditional. In its opinion in *Bennett* the Supreme Court

---

**8.** *Bowen* is cited in two Ninth Circuit opinions in addition to *Ayala–Chavez* and *F.D.I.C. v. New Hampshire Ins. Co.; Sierra Club v. Department of Transp.*, 948 F.2d 568, 573 (9th Cir.1991); and *Norfolk Energy, Inc. v. Hodel*, 898 F.2d 1435,

1441 (9th Cir.1990) but in neither case as authority for the proposition that Congressional legislation will not be construed to have retroactive effect in absence of express language requiring it.

explained its holding in *Bradley*, noting that *Bradley* itself acknowledged "[t]he Court has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional". *Bennett*, 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985) citing *Bradley*, 416 U.S. at 715, 94 S.Ct. at 2018.

The rights at issue here, compensatory damages and jury trial, are not substantive rights nor does it appear that retroactivity would "infringe upon or deprive a person of a right that had matured or become unconditional" these rights are remedies and procedural rights as in *Friel*. Indeed, the right to a jury trial has held to be a procedural right. *Wabol v. Villacrusis*, 908 F.2d 411, 421 (9th Cir.1990). Unlike other provisions[9] of the 1991 Act, § 1981a's provision for compensatory damages does not create new substantive rights or duties it merely provides an additional remedy (compensatory damages) for violation of an existing right (to be free from discrimination)[10].

A final reason for choosing the *Bradley* presumption instead of *Bowen's* is that the often quoted phrase in *Bowen* relating to presumption against retroactivity, was neither necessary nor part of the Court's holding. The Court held that administrative agencies were powerless to enact retroactive rules. *Bowen, Id.* 488 U.S. at 208, 109 S.Ct. at 471. Indeed, the presumption in favor of or against retroactivity was not at issue in *Bowen* since the intent of the rule in question, that it be applied retroactively, was clearly expressed. That the Court in *Bowen* did not consider or intend to overrule *Bradley* is further demonstrated by

the fact that four of the Justices (Chief Justice Reinquist, Justice Brennan, Justice White, and Justice Blackmun) participating in Court's opinion in *Bradley* concurred in *Bowen*, without any discussion of the presumption governing retroactivity other than the single paragraph at 488 U.S. at 208, 109 S.Ct. at 471.

## SUMMARY

In *Bradley* the Supreme Court held that a court was obliged to apply the law in existence at the time of its decision unless manifest injustice would result. The Court stated that in order to determine whether injustice would result from retroactive application that a court must consider "(a) the nature and identity of the parties; (b) the nature of their rights and (c) the nature of the impact of the change in law upon those rights." *Bradley*, 416 U.S. at 718, 94 S.Ct. at 2019. In applying these factors to the instant case the court notes that (a) the defendant is a public entity and the intervenor one of its employees; however, (b) the question at issue is a great national concern since it deals with the remedies for intentional discrimination; (c) the retrospective application of the change in the law to provide for a jury trial and compensatory damages does not affect the rights and duties of the parties as they existed before the enactment of the legislation. Intervenor was entitled by law to be free from discrimination and the Defendant was prohibited by law from discriminating against its employees by reason of their national origin, indeed the requested remedies identical to the ones sought by intervenor were provided by state law. The retroactive application of § 1981a to this

---

**9.** Those portions of the act which create new rights or shift or alter the burden of proof and/or overturn judicial precedents appear to be substantive rights and retroactive application of the act with respect to these rights may well be prohibited by the principles enunciated by the Supreme Court in *Bennett* and the Ninth Circuit in *Friel*. These include Section 105 effecting the burden of proof in disparate impact cases; Section 101(b)'s application of 42 U.S.C. § 1981 to post employment discrimination; Section 107's clarification regarding mixed motive discrimination cases.

**10.** Indeed, under California's Fair Employment and Housing Act, Cal. Government Code §§ 12900 *et seq.*, Defendant would be subject to an award of compensatory damage and Plaintiff would be entitled to a jury trial for the very wrongs complained of in this case therefore Defendant cannot claim that the availability of compensatory damages or trial by jury would have altered its conduct or expectations.

**854**

case will not infringe upon or deprive any person of a right which had matured or become unconditional.

Finally, retroactive application of § 1981a rights will not affect existing rights or give rise to new unanticipated obligations imposed upon any party without notice or an opportunity to be heard. The parties retain their due process rights to fully litigate the issues, the only difference is that Intervenor will now be entitled to a jury trial on the issues of intentional discrimination and compensatory damages (a right long guaranteed in most litigation by the Constitution and jealously guarded in the law) and to be fully compensated for any harm she suffered by reason of discrimination. By the same token, Defendant retains all its rights not to be subjected to liability, unless and until Intervenor and/or Plaintiff bear the burden of proof and demonstrate intentional discrimination. Compensatory damages may only be recovered where "Respondent ... engaged in unlawful intentional discrimination ...". 1991 Civil Rights Act Section 102(a) amending 42 U.S.C. § 1981a.

Accordingly, the court ORDERS Plaintiff's motion for leave to intervene be GRANTED. Plaintiff is directed to file and serve her complaint in intervention within twenty (20) days of service by mail of this order upon her. Defendants are ORDERED to respond within twenty (20) days and this matter is set for Scheduling Conference according to Local Rules of Practice for the Eastern District of California Rule 240 on April 23, 1992 at 8:30 a.m. unless the parties agree and move the court for earlier hearing relating to Scheduling Conference.