58 F.3d 1483
 149 L.R.R.M. (BNA) 2714, 130 Lab.Cas. P 11,356
 Charles BOWDRY, Crist Ellis, Norma Wong Larkin, Bob Burger,
Paul Hart, Rich Kennon, Milton Howard, Norman
Rankin, Plaintiffs,
and
Glenn Mullins, Dane Vannice, Loren Mach, Russell Estill,
Ralph Estill, James Hartzer, Plaintiffs-Appellants,
v.
UNITED AIRLINES, INC., Defendant-Appellee.
Charles Bowdry, Crist Ellis, Norma Wong Larkin, Paul Hart,
Glenn Mullins, Dane Vannice, Loren Mach, Russell
Estill, Ralph Estill, James Hartzer,
Milton Howard, Norman Rankin, Plaintiffs,
and
Bob BURGER and Rich Kennon, Plaintiffs-Appellants,
v.
UNITED AIRLINES, INC., Defendant-Appellee.
 Nos. 94-1150, 94-1277.
 United States Court of Appeals,
Tenth Circuit.
 June 28, 1995.
 
 Elisa Moran (John Mosby with her on the briefs), Denver, CO, for appellants.
 Kris J. Kostolansky (Michael D. Nosler and Susan L. Strebel, with him on the brief), Rothgerber, Appel, Powers & Johnson, Denver, CO, for appellee.
 Before MOORE, STEPHEN H. ANDERSON, and TACHA, Circuit Judges.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Plaintiffs-appellants, eight former employees of the defunct Frontier Airlines ("employees"), brought this suit against United Airlines, Inc. ("United"), contending that United breached its statutory duty under the Airline Deregulation Act of 1978 (the "Act"), when it failed to give them preferential hiring treatment as mandated under section 43(d)[1] of the Act.[2] The district court dismissed the suit on United's motion for summary judgment, reasoning that as a matter of law the employees had breached their duty to notify United that they were claiming their rights under the Act.
 
 
 2
 The employees appeal that decision[3] as well as the court's ruling that they are not entitled to a jury trial. Among other things, they contend that the question of their discharge of their duty, and the fulfillment by United of its duty under the Act, is a question of fact in this case, and that, therefore, summary judgment was improper. We agree, and reverse and remand this case to the district court for further proceedings. However, we affirm the district court's striking of the employees' jury demand.
 
 BACKGROUND
 
 3
 When Congress deregulated the airline industry in 1978, its enactment included an employee protection program to assist long-term airline employees who might lose their jobs in the resulting industry adjustments. Specifically, employees who have been working for a covered airline since October 24, 1974, or earlier, and who are subsequently terminated due to their employer-airline's bankruptcy, are granted preferential hiring by other covered air carriers.[4]
 
 
 4
 Although the parties disagree on the manner by which protected employees must claim their rights under the Act, they agree that the appellants meet the Act's threshold qualifications; that is, they had been regularly employed for the required period as ramp service workers for Frontier Airlines, and they were terminated due to Frontier's bankruptcy in August 1986.
 
 
 5
 Shortly after Frontier ceased operating, United invited all former Frontier employees to an open house. Apparently, six of the appellant employees attended and either filled out and submitted an application form with "Frontier" stamped on the front, or were given a card stamped with "Frontier" which they were told to mail in for an application form. See Appellants' App. at 94, 140, 266-68, 303, 322; see also id. at 158-61, 170-73. All appellant-employees claim that the application forms which they submitted contained all requested information, including complete work histories that indicated employment qualifying them for protected status and termination due to Frontier's bankruptcy. However, the application form did not ask whether the employees were "covered," "protected," or "designated" under the Act, and none of the employees expressly referenced the Act or its specific terms.
 
 
 6
 United filed a motion for summary judgment on the notification issue, contending that the employees had failed to present any evidence that they notified United of their protected status during the application process. The district court agreed and granted United's motion.
 
 DISCUSSION
 
 7
 We review a summary judgment de novo, applying the same standards as the trial court. Allstate Ins. Co. v. Worthington, 46 F.3d 1005, 1007 (10th Cir.1995). Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We therefore must view the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir.1995).
 
 A.
 In relevant part, the Act provides:
 
 8
 (d) Duty to hire protected employees
 
 
 9
 (1) Each person who is a protected employee of [a covered] air carrier ... who is ... terminated ... (other than for cause) ... shall have first right of hire, regardless of age, in his occupational specialty, by any other air carrier hiring additional employees.... Each such air carrier hiring additional employees shall have a duty to hire such a person before they hire any other person, except ... any of its own furloughed employees....
 
 49 U.S.C.App. Sec. 1552(d).[5]
 
 10
 The final regulations which the Department of Labor ("DOL") issued to implement the Act define a protected employee who is involuntarily terminated, other than for cause, as a "designated employee." 29 C.F.R. Secs. 220.01(f), 220.10 (1994). In addition to requiring airlines to follow specific criteria for listing and filling vacancies, the regulations require each covered airline to compile a list of all protected employees, to forward the list to the Secretary of Labor, to notify its protected employees that they were so listed, and to issue notice of rights letters to designated employees. Id. Sec. 220.22-220.25, 220.27(a).[6]
 
 
 11
 The regulations also set out the following employee responsibilities:
 
 
 12
 It is the responsibility of each designated employee to:
 
 
 13
 (a) Make application to any covered air carrier for whom the designated employee desires to work in the time and manner required by such carrier.
 
 
 14
 (b) To insure that an application previously submitted to a covered air carrier which currently lists a vacancy is in an active status so as to be considered for such vacancy;
 
 
 15
 (c) To provide a copy, if requested, of the notice of rights to a potential employing air carrier; and
 
 
 16
 (d) To retain the original of notice of rights for future use.
 
 
 17
 Id. Sec. 220.30.
 
 1.
 
 18
 Noting the Act's express language regarding the airline's duty, and its silence respecting employee duties, the employees place the burden on United. With respect to the discharge of duties under the Act, the employees postulate that the duty to hire necessarily imposes the choice of means to satisfy that duty upon the carrier. Thus, they emphasize the ease with which United could have ascertained an applicant's status in order to fulfill its duty. For example, United could have asked about status on the application, or it could have requested a notice of rights letter, or it could have checked applicants against the DOL master list which contained the names of all protected employees.[7] Appellants' Br. at 9.
 
 
 19
 Moreover, pointing to the above DOL regulations, the employees argue that section 220.30(a) limits their initial application responsibility strictly to the form, i.e., "time and manner required by [the] carrier," and that United's application form did not ask if they were protected or designated. Further, relying on section 220.30(c), the employees assert that they were required to give formal notice of rights only "if requested," and that United never requested such notice.
 
 
 20
 Finally, the employees contend that, in any event, United had actual or constructive notice of their protected status by virtue of the fact that they listed qualifying work history and cause of termination. Thus, they urge that, at the very least, whether they fulfilled any duty to notify United is a question of fact, and that the district court erred by requiring specific reference or terminology under the Act as a matter of law.
 
 2.
 
 21
 United contends that its duty to hire only arises after an applicant expressly informs it that the Act applies or that he or she is protected. See Gonzalez v. Aloha Airlines, Inc., 940 F.2d 1312, 1314 (9th Cir.1991), and Crocker v. Piedmont Aviation, Inc., 696 F.Supp. 685, 693 (D.D.C.1988), aff'd on other grounds, 49 F.3d 735 (D.C.Cir.1995).
 
 
 22
 Additionally, United relies on a DOL opinion letter written to Northwest Airlines stating that, "[i]ndividuals are not assigned designated employee status, they claim the status." Letter from H. Charles Spring, Acting Deputy Under Secretary, U.S. Department of Labor, to Mary P. Weir, Northwest Airlines, Inc. (June 20, 1991), Appellants' App. at 186-87.
 
 
 23
 Finally, United argues that by requiring airlines to list and notify protected and designated employees, the regulations intend to place the ultimate burden of claiming any rights upon the informed employee who "is in the best position to protect his rights." Appellee's Br. at 13.
 
 3.
 
 24
 In fact, neither the Act nor the regulations are as rigid or as antiseptic as either party asserts.
 
 
 25
 Thus, we agree with the general proposition that protected employees have an obligation to alert prospective employers of their protected status under the Act. See Gonzalez, 940 F.2d at 1314; Crocker, 696 F.Supp. at 693.[8] However, that obligation is only a subset of the employer's express statutory duty to hire protected employees preferentially. The Act clearly applies to all employees who meet its status requirements. The employer's duty to hire is not, therefore, triggered by what the employee does, but by what the employer knows.[9]
 
 
 26
 Whether a prospective employer is sufficiently on notice that a particular applicant is a protected employee under the Act is a question of fact to be determined after analyzing all the facts and circumstances surrounding the job application. On the one hand, mere possession by the airline of the DOL list of all covered individuals is too disconnected from a particular job application to place the airline on notice. On the other hand, a formal declaration by the applicant is not essential.
 
 
 27
 Here, as indicated above, United invited former Frontier employees to a job related open house, and handed out job application forms or cards to mail in for application forms. The forms and cards were stamped "Frontier." Furthermore, the applications requested details of the applicant's work history which the employees claim they filled out showing the previous employment with Frontier and termination due to Frontier's bankruptcy. At the very least these facts preclude summary judgment in favor of United.
 
 B.
 
 28
 Asserting that they are entitled to a jury trial, the employees contend that the district court erred in striking their jury demand.
 
 1.
 
 29
 United has moved to dismiss this portion of the appeal, arguing that we lack subject matter jurisdiction. As background, United recites the following facts and chronology: The district court entered its original order striking the employees' jury demand on January 18, 1991. In addition to striking the jury demand, that order also dismissed the action of Dane Vannice as well as two other plaintiffs, Paul Hart and Milton Howard.[10] All three appealed the dismissal, although they did not appeal the order striking the jury demand. We reversed and remanded. Bowdry v. United Air Lines, Inc., 956 F.2d 999 (10th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 97, 121 L.Ed.2d 57 (1992).
 
 
 30
 On January 7, 1994, United filed for summary judgment on the issue of notification. On February 9, 1994, the plaintiffs filed a "Motion for Reconsideration of Court's Order of January 18, 1991, Denying a Jury Trial." After oral argument, on March 3, 1994, the district court denied the motion for reconsideration.
 
 
 31
 On March 18, 1994, the district court entered summary judgment against the eight employees herein. The employees then filed their notice of appeal, and United moved to dismiss, because the judgment appealed from was not final. Following our Show Cause Order, the employees obtained Rule 54(b) certification as to the summary judgment order.
 
 
 32
 United contends that we lack subject matter jurisdiction for the following reasons: (a) Neither the order striking the jury demand nor the order denying the motion to reconsider was certified under rule 54(b) or under 28 U.S.C. Sec. 1292(b), and an order striking a demand for a jury trial is not subject to certification in any event; (b) There is no appellate court jurisdiction over the denial of a motion to reconsider; the employees are really seeking a review of the January 18, 1991, order striking the jury demand, which is untimely under Fed.R.App.P. 4(a); (c) The order denying the motion to reconsider is not a collateral order; and, (d) The issue is not subject to pendent jurisdiction.
 
 
 33
 In support, United relies on cases involving appellants who still had claims pending before the trial court. Such reliance is misplaced inasmuch as the summary judgment in this case disposed of these appellants' only remaining claim, completely terminating their action. Once certified under Rule 54(b), that judgment was final. All prior interlocutory judgments affecting these appellants merged into the final judgment and became appealable at that time.[11] See Bankers Trust Co. v. Lee Keeling & Assocs., Inc., 20 F.3d 1092, 1096 (10th Cir.1994); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 2d Sec. 2322, at 175 (1995) (A "party may have review of the denial of a jury on an appeal from the final judgment") (citing King v. United Benefit Fire Ins. Co., 377 F.2d 728 (10th Cir.), cert. denied, 389 U.S. 857, 88 S.Ct. 99, 19 L.Ed.2d 124 (1967)).
 
 2.
 
 34
 Entitlement to a jury trial is a question of law which we review de novo. Towe Antique Ford Found. v. I.R.S., 999 F.2d 1387, 1395 (9th Cir.1993). When a statute is silent on the right to a jury trial, we look to the Seventh Amendment to determine entitlement. See Tull v. United States, 481 U.S. 412, 417 & n. 3, 107 S.Ct. 1831, 1835 & n. 3, 95 L.Ed.2d 365 (1987); Thompson v. Kerr-McGee Refining Corp., 660 F.2d 1380, 1386 (10th Cir.1981), cert. denied, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982). The Seventh Amendment preserves the right to jury trial for "suits at common law," where the value in controversy exceeds twenty dollars. This entitlement extends to all suits where legal rights are involved. Curtis v. Loether, 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974). However, the Seventh Amendment does not apply to actions which involve only equitable rights or which traditionally arose in equity.[12] Granfinanciera v. Nordberg, 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989).
 
 
 35
 In their opening brief, the employees argue that they are entitled to a jury trial because their action resembles an action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 621-634, which provides for a jury trial.
 
 
 36
 United correctly counters that the employees cannot base their jury right upon the ADEA, since the right under the ADEA arises from express provisions in that statute. Specifically, the ADEA provides for enforcement in accordance with the "powers, remedies, and procedures" of the Fair Labor Standards Act, see 29 U.S.C. Sec. 626(b), which includes the well-established right to a jury trial. Lorillard v. Pons, 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978). Additionally, the ADEA authorizes the recovery of "legal or equitable relief." 29 U.S.C. Sec. 626(b); see Lorillard, 434 U.S. at 583, 98 S.Ct. at 871. In this context, "legal relief" is a term of art which indicates Congress's intent that such actions be triable to a jury. Id.
 
 
 37
 By contrast, the Airline Deregulation Act has no provision regarding the right to a jury trial. Furthermore, the mere fact that the Act indicates that age may not be considered in according hiring preference does not compel the conclusion that this action is an age discrimination action. A first-hire action under the Airline Deregulation Act "is not, at its core, an antidiscrimination suit." Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 746 (D.C.Cir.1995).[13]
 
 
 38
 In their reply brief the employees further argue that they are entitled to a jury trial because their complaint seeks legal relief in the form of monetary damages such as back pay. However, the employees failed to raise this argument in their opening brief on appeal. Therefore, they abandoned or waived the argument, and we will not address it on the merits. State Farm Fire & Casualty Co. v. Mhoon, 31 F.3d 979, 984 n. 7 (10th Cir.1994) (citing Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1277-78 (10th Cir.1994)); Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 724 (10th Cir.1993).
 
 
 39
 For the reasons stated, the summary judgment of the district court is REVERSED; the order striking the jury demand is AFFIRMED, and this matter is REMANDED for proceedings consistent with this opinion.
 
 
 
 [1]
 Originally codified at 49 U.S.C.App. Sec. 1552(d) (1978) (current version at 49 U.S.C. Sec. 42103(a) (Supp.1995))
 
 
 [2]
 Both parties refer to appellants as "employees," which also accords with terminology under the Act. Therefore, we also refer to appellants as employees, although in fact they are not employees of United, but rather job applicants
 
 
 [3]
 Six of the employees appealed immediately, and two of the employees appealed following certification pursuant to Fed.R.Civ.P. 54(b). We have consolidated the two appeals
 
 
 [4]
 The Act further provides that this protection applies only to employees terminated before October 23, 1988. Act Sec. 43(d)(1)
 
 
 [5]
 In 1994 Congress amended and recodified this provision. See 49 U.S.C. Sec. 42103(a). The amendment, however, effected no substantive change. See H.R. 180, 103d Cong., 2d Sess. 5, reprinted in 1994 U.S.C.C.A.N. 818, 822
 
 
 [6]
 The regulations also require the Secretary of Labor to maintain a comprehensive listing of all vacancies, and to distribute a composite list of protected employees to all carriers. 29 C.F.R. Secs. 220.40(a), 220.41 (1994)
 
 
 [7]
 The DOL distributed the master list in April 1987. At that time, seven of the employees' applications were still in United's active file, and the eighth application was submitted subsequently. Appellee's Br. at 16-17
 
 
 [8]
 Significantly, we note that neither case determined the method by which an employee must inform the airline that the Act applies. Moreover, regarding the applicant's duty to keep his application active, Crocker specifically noted that the meaning which the parties themselves attached to their correspondence was more relevant than abstract interpretations of the regulations. Crocker, 696 F.Supp at 693-94
 
 
 [9]
 Thus, contrary to United's argument, we conclude that the DOL opinion letter to Northwest Airlines, stating that applicants must "claim their status" under the Act, does not imply a DOL interpretative policy to place the onus entirely upon the employee. Notably, Northwest Airlines stated that it specifically asked whether an applicant was a designated employee. Responding to that limited query, the DOL correctly concluded that applicants who fail or refuse to answer a direct question regarding their designated employee status are expressly negating any intention to assert or claim their rights of first hire. Under such circumstances, the carrier has no duty to accord them such rights. See Letter from H. Charles Spring, Acting Deputy Under Secretary, U.S. Department of Labor, to Mary P. Weir, Northwest Airlines, Inc. (June 20, 1991), Appellants' App. at 186-87
 This conclusion that an applicant must affirmatively respond to a carrier's precise question does not, however, compel the conclusion that the protected employee must make an initial, formal declaration. In fact, the DOL material in the record suggests otherwise. For example, a few months after the regulations became effective, the DOL sent a letter to all carriers which explained various aspects of the rehire program. Appellants' App. at 489-90. Among other things, the DOL enclosed a suggested form for the Notice of Rights letter that the carriers were required to give to designated employees. Id. at 491. In its form, the DOL suggested only the following relevant direction to such employees, "To exercise your rights, you must apply for work in the time and manner required by the carrier." Id.
 
 
 [10]
 The current summary judgment did not include Hart and Howard, so neither are involved in this appeal
 
 
 [11]
 For the seven appellant-employees who were not dismissed by the first summary judgment, the original striking of the jury demand was interlocutory and did not become appealable until the subsequent final judgment which disposed of their actions. Therefore the current appeal of this issue is timely under Fed.R.App.P. 4(a). Moreover, it is immaterial that the employees' docketing statement designates the denial of the motion to reconsider rather than the original order, since a notice of appeal which " 'names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment.' " Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1383 n. 7 (10th Cir.1994) (quoting 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Civil 2d Sec. 3949, at 440 (Supp.1994))
 
 
 [12]
 A court determines whether a statutory action involves legal rights, rather than equitable rights, by examining the nature of the issues involved and the remedies sought. Wooddell v. IBEW Local 71, 502 U.S. 93, 97, 112 S.Ct. 494, 497, 116 L.Ed.2d 419 (1991) (citing Teamsters Local No. 391 v. Terry, 494 U.S. 558, 565, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990)). However, the employees' argument does not address this analysis
 
 
 [13]
 Ultimately, Crocker did find a right to a jury trial under the Act. However, that conclusion was based on an argument which was not made in the employees' opening brief